## STATE v. A. M. GOUGE.

(Filed 27 November, 1911.)

1. **Indictment—Mutilation of Records—Tax List—Register of Deeds.**

    An indictment charging that defendant "did unlawfully, willfully, and corruptly, and with fraudulent intent and purpose, take from the office of the register of deeds . . . the tax books" for a certain year, the books having been deposited in the register's office as ordered by law, and "did unlawfully, maliciously, willfully, and fraudulently obliterate, injure, and change the said tax book" for the certain year, "a record required to be kept by the register of deeds," is within the terms of Revisal, 3508.

2. **Same—Tax Book — Record — Indictment — Interpretation of Statutes.**

    The tax book of the register of deeds is a book of records required to be kept by the register of deeds, and it falls within the meaning of Revisal, 3508, making it an indictable offense under the conditions therein stated for their obliteration, etc.

3. **Same—Register of Deeds—Clerk to Board County Commissioners —Interchangeable Positions—Interpretation of Statutes.**

    The register of deeds is *ex officio* clerk to the board of county commissioners (Revisal, 2666), and the two positions are not separate offices, but used interchangeably in the statute (Revisal, 5238, 5239, 5240), and it is provided (Revisal, 5237) that the tax book to be made out by the register of deeds "shall remain in the office of" the clerk of the board of commissioners, and *Held*, a charge of an unlawful, etc., obliteration of the tax books required to be kept by the register of deeds meets with the requirements in that regard of Revisal, 3508.

4. **Register of Deeds—Copy of Abstract to Auditor—Requirements.**

    The register of deeds is not required to keep in his office a copy of the abstract from the tax book which the statute directs him to send to the State Auditor.

5. **Register of Deeds—Tax Books—Township Totals—Mutilation— Indictment—Interpretation of Statutes.**

    While the statute does not require the total tax for each township to be put in the tax book or record, of the computation of taxes for a county, it is a customary and convenient practice, and when such has been done, a mutilation or change of the totals on the record falls within the meaning of Revisal, 3508, and is an indictable offense when its provisions have been violated; besides, objections, in this respect, relate to matters of proof and not to the sufficiency of the indictment.

STATE *v.* GOUGE.

6. **Indictment—Tax Books—Register of Deeds—Mutilation—Township Totals—Auditor's Abstract—Parol Evidence.**

Upon a trial under an indictment of a deputy sheriff for changing the township totals of taxation for fraudulent purposes respecting a settlement thereof, testimony of a witness to the effect that the abstract which he made and sent to the Auditor was a correct copy from the tax list, and that the books now show a mutilation and change of the tax lists as to these township totals, amounting to a certain sum, which the defendant is charged with drawing from the bank of deposit for his own use, is competent, as the abstract sent the Auditor was made from unchanged items and could in no wise be affected by the alteration of the township totals.

7. **Same.**

An abstract made by a witness for the State Auditor from the tax list is but a written declaration of the witness which he at one time made as to the amount of the unaltered totals, and it is not necessary that this abstract be produced under an indictment for violation of Revisal, 3508, for the witness to state the township totals therein, for he may now testify what the total was, the parties being entitled to produce the abstract in corroboration or rebuttal, as the case may be, and in this case the addition of the unaltered items was introduced, from which the jury could ascertain whether the totals were correct or not.

8. **Indictment—Mutilation of Records—Tax Books—Defalcation of Sheriff—Evidence.**

Evidence that a deputy sheriff altered the township totals of taxation taken from the tax book and drew the difference in gold from the bank in order that his defalcation might not be traced to him, is simply that of a circumstance competent for what it is worth, as tending to show illegality and fraud, under indictment for violating the provisions of Revisal, 3508.

9. **Same—Character Witnesses—Cross-examination.**

A deputy sheriff was indicted for unlawfully mutilating the township totals of taxation (under Revisal, 3508) made out by the register of deeds and in his office, in order to conceal his defalcation: *Held*, competent on cross-examination of defendant's witness, for him to state that he had threatened the defendant with proceedings before a Superior Court judge before he would show his books or state the amount he had paid over, and it was not objectionable as an attack on the good character of the witness by proving specific acts of misconduct.

10. Same.

> The cross-examination of a character witness is not restricted
> to the matter brought out on the direct examination, and in this
> case it was held competent for the State on cross-examination to
> bring out the fact as an incriminating circumstance, that the
> defendant, indicted under Revisal, 3508, twice refused to show his
> books to proper authority, or disclose the tax fund he had paid
> over, until threatened with legal proceedings.

BROWN, J., dissenting; ALLEN, J., concurring in dissenting opinion.

APPEAL from *Long, J.,* at April Term, 1911, of MITCHELL.

The facts are sufficiently stated in the opinion of the Court
by *Mr. Chief Justice Clark.*

*Attorney-General Bickett and Assistant Attorney-General
George L. Jones for the State.*

*W. L. Lambert, W. C. Newland, and S. J. Ervin for defend-
ant.*

CLARK, C. J. The defendant was convicted upon an indict-
ment under Revisal, 3508, for fraudulently mutilating and
changing tax books covering certain townships in Mitchell
County. The indictment charged that the defendant "did un-
lawfully, willfully, and corruptly, and with a fraudulent intent
and purpose, take from the office of the register of deeds of the
said county the tax book for the year 1908, said tax book having
been deposited in said office as ordered by law, and did unlaw-
fully, maliciously, willfully, and fraudulently obliterate, injure,
and change the said tax book for the year 1908, a record required
to be kept by the register of deeds."

The indictment comes squarely within the terms of the stat-
ute, and the motion to quash was properly denied. The tax list
is in a bound volume and is a "book of records required to be
kept by the register of deeds." The register of deeds is *ex officio*
clerk of the board of county commissioners. Revisal, 2666. The
clerk of the board of commissioners is not a separate office, but
a part of the office of register of deeds. The two offices are used
interchangeably in the statute. In Revisal, 5238, the title says:
"The register of deeds can make out tax duplicates." In the
same section it is provided that one of the copies "shall remain

in the office of the clerk of the board of commissioners," and further on in the same section it is said that an allowance shall be made to the "register of deeds." In Revisal, 5239, both the terms "register of deeds" and "clerk of the board of commissioners" are used. In Revisal, 5240, the same interchangeable use of these words occurs.

The defendant is indicted for altering and multilating the *tax list,* and not a copy of the abstract which was sent to the Auditor. The abstract sent to the Auditor is taken from the tax list, and a copy of such abstract is not required to be kept.

The defendant made the further objection that since the evidence shows that the township totals were changed, the indictment is not good, because the law does not require the total for each township to be put in the record. It is true, the statute does not say in so many words that the total of the tax of each township shall be set down by the register of deeds, but, being so set down, as is convenient and customary, to mutilate and change those totals is to mutilate and change the record, which the register of deeds has made in compiling the tax list for the county. Besides, this is a matter of proof and not a question of the sufficiency of the indictment.

The defendant further contends that it was error to permit the witness to state that the abstract which he made and sent to the Auditor was a correct copy from the tax list and that the books show now that there has been a mutilation and change of the tax list as to the totals which were recorded from certain townships, amounting in the aggregate to about $3,000.

The register of deeds, through his office force, prepared two copies of the tax list, one for his office and one for the office of the sheriff. In the register's own copy of the tax-list book the township totals appeared, and it was these that the defendant was charged with having altered. It was not contended that the general tax items on the tax list had been changed, only the township totals. The evidence of the witness amounted to nothing more than his saying that on a certain day, after the tax lists were made out, he added the general items of the county taxes and arrived at a certain sum, and thereafter when he compared that sum with the totals of the townships as they appeared

on the tax list, the county total made about $3,000 more than the sum of the township totals as they appeared after the alteration therein. The abstract sent the Auditor having been made from the unchanged items, could be in no wise affected by the alteration in the township totals.

The defendant urges that the abstract sent to the Auditor's office should have been produced and that it was error to permit the witness to testify as to the sum total which was shown by such abstract. But there is no charge that the abstract was in any wise altered by the defendant. The abstract was simply a declaration made by the witness and was of no higher dignity, as concerns this trial, than his oral testimony as to what amount it showed. A certified copy of such abstract might have been used to corroborate the witness, or might have been used by the defendant to contradict him. But neither was required. The abstract was a written declaration of the witness which he at one time made as to the amount of the unaltered totals, but that did not prevent him from testifying now what the total was. The addition of the unaltered items on the tax-list book, which was before the jury, would show whether he is correct or not, without obtaining the abstract, which was a mere statement made out at some other time as to what the total of the general items of the tax list amounted to.

The other exceptions which were pressed were that the defendant while collecting taxes as deputy sheriff drew from the bank money from the sheriff's account which he took in gold, and refused to tell the amount of money which had been paid over to the school fund. The charge is that the township totals were mutilated by the defendant to show about $3,000 less than the true amount. It is contended that the motive was to settle by these reduced totals, which thus enabled the defendant to draw out the difference between the true amount collected and the amount shown by the addition of the altered township totals, and that the defendant drew this money in gold, so that it might not be traced. This was simply a circumstance which was competent to go to the jury for what it was worth and tending to show that the act was done "illegally and fraudulently," as charged.

A witness who had testified as to the good character of the defendant was permitted to state on cross-examination that he had threatened the defendant with Judge Councill before he would show his books or state the amount he had paid over. It is true that it is not competent on cross-examination to attack evidence as to good character by proving specific acts of misconduct. *S. v. Bullard,* 100 N. C., 486. But this the State did not attempt to do. The witness was put up by the defendant as a character witness, but the cross-examination is not restricted to that matter and it was competent for the State on the cross-examination to bring out the facts as an incriminating circumstance that the defendant twice refused to show his books to proper authority or to disclose the amount of the tax fund he had paid over to the board of education until the witness threatened to appeal to the Superior Court judge to force him to do so. The evidence was submitted to the jury for that purpose only.

No error.

BROWN, J., dissenting: I would not dissent in this case unless I thought a serious error had been committed. I believe in sustaining convictions of crime in the lower courts unless some *substantial* error has been committed. It may be that the error which I think has been committed in this case would not have changed the result, but I cannot give my approbation to the precedent the ruling of the Court will establish.

The abstract referred to in the opinion of the Court is as much a record as the tax lists. Such record was in existence and well known to the register of deeds and to the prosecutor. One was in the Auditor's office and one in the Corporation Commission.

The sum totals of that abstract was a potent fact in the proof. The register of deeds made them out. The correctness of his recollection of those totals was a most pertinent and important matter. The State had the right under the statute to offer copies of the originals, duly certified. Such copies are the best secondary evidence and far more reliable than the memory of the witness.

I think they should have been produced on the trial. *Kelly v. Craig,* 27 N. C., 129. In this case *Chief Justice Ruffin* says: "It is always a question of law whether the best evidence in the party's power has been produced, and inferior evidence is not admissible. If in this case the sheriff's copy of the tax list had been offered, it would have been competent, as there was sufficient proof of the destruction of the original. So, if it had appeared that the sheriff's copy had also been lost, then the parol evidence might have been given, since the paper of which the contents were proved was certainly lost, whether it was that in the clerk's office or in the sheriff's office."

See, also, the remarks of same great judge in *Kello v. Maget,* 18 N. C., 425; *Nelson v. Whitfield,* 82 N. C., 46; 25 Am. and Eng. Ency., 162-167.

MR. JUSTICE ALLEN concurs in this dissent.